LISA BORODKIN, ATTORNEY AT LAW
LISA J. BORODKIN, ESQ., STATE BAR NO. 196412
LISA@LISABORODKIN.COM
2009 CLARK LANE B
REDONDO BEACH, CALIFORNIA 90278
TELEPHONE: (323) 337-7933

KING, HOLMES, PATERNO & BERLINER, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
KING@KHPBLAW.COM
1900 AVENUE OF THE STARS, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE: (310) 282-8989
FACSIMILE:  (310) 282-8903

Attorneys for Plaintiff Elinor Shapiro

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ELINOR SHAPIRO,<br><br>                    Plaintiff,<br><br>        v.<br><br>HASBRO, INC., and DOES ONE to TEN,<br><br>                    Defendants. | CASE NO.   2:15-cv-2964<br><br>**COMPLAINT FOR**<br><br>**(1)  BREACH OF CONTRACT**<br>**(2)  BREACH OF IMPLIED COVENANT**<br>**(3)  MISAPPROPRIATION OF TRADE SECRETS**<br>**(4)  COPYRIGHT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Elinor Shapiro ("Shapiro") alleges as follows:

## THE NATURE OF THIS ACTION

1.      Shapiro, a proven toy inventor and marketing expert known for creating and marketing collectible toys in the small doll category, was solicited by Defendant

Hasbro, Inc. ("Hasbro") to submit original materials for use with Hasbro's existing properties under an express Agreement to Hold Confidential ("AHC").

2.  Hasbro initiated Shapiro's submission by a November 2, 2012 email that described in detail the types of information Hasbro was seeking with phrases such as "excitement, low cost innovations," "never before seen mechanisms," "new ways to play," and "newest and hottest girls trend" specifically in reference to Hasbro's existing properties including Littlest Pet Shop and My Little Pony.

3.  Hasbro received Shapiro's submissions at an April 25, 2013 meeting in Santa Monica, California that Hasbro arranged as part of its West Coast Inventor Tour. Hasbro thereafter asked Shapiro to send her slideshow and three-dimensional prototypes to its headquarters in Pawtucket, Rhode Island to study for three months.

4.  Hasbro thereafter took confidential information that Shapiro presented under the AHC and used it without compensating Shapiro. A view of one of Hasbro's My Little Pony Cutie Mark Magic Water Cuties toys (an "Accused Toy") released subsequent to April 25, 2013 is shown at right in the below image, side-by-side with one of Shapiro's prototypes submitted under the AHC.



5.      A second view of the Accused Toy (shown below, at left) after it has been shaken shows clearly that the glitter floating inside the Accused Toy is in a symbolic shape (in this case, diamond-shaped). In the image below, the Accused Toy is shown, with its diamond-shaped glitter, side-by-side with Shapiro's prototype, which together with Shapiro's slideshow, expressed that each character in Shapiro's submission "has a special symbol, and symbol is floating inside that character → further encouraging collectability."

6.     The "excitement, low-cost innovation," "never-before-seen mechanism," "new way to play," and "newest and hottest girls trend" shown in the foregoing pictures were not the only confidential information that Hasbro took from Shapiro under the AHC. Despite this, Hasbro does not want to pay Shapiro for the information it took under the AHC.

## JURISDICTION AND VENUE

7.     Jurisdiction is proper pursuant to 28 U.S.C. §§ 1332(a)(1) because the Court has diversity jurisdiction over this action.  The action includes claims solely between a citizen of the State of California and a citizen of the State of Rhode Island, and the amount in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand Dollars ($75,000.00). Jurisdiction is also proper pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action includes a claim arising under the provisions of the Copyright Act of the United States, as amended, 17 U.S.C. § 101 *et seq.*, and is for infringement of copyrights registered in the Copyright Office of the United States.

8.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and (d) in that Defendant or its agents may be found in this district, and a substantial number of the acts or omissions giving rise to Plaintiff's claim occurred in this district.

## THE PARTIES

9.     Shapiro is a professional toy designer, inventor, consultant and former toy company executive, and is a citizen of the City of Los Angeles, State of California, with her principal place of business in Los Angeles, California.

10.     Shapiro is informed and believes and thereupon alleges that Defendant Hasbro is a company organized and existing under the laws of Rhode Island, and a citizen of the State of Rhode Island with its principal place of business at 1027 Newport Avenue, Pawtucket, Rhode Island, and a registered agent for service of process in California at 818 West Seventh Street, 2nd Floor, Los Angeles, California

1 | 90017.

2 |     11.    Shapiro is informed and believes and thereupon alleges that the nerve

3 | center of Hasbro's business is in Rhode Island, because that is where its home office

4 | is located, where the majority of its executive and administrative functions are

5 | performed, and where its high-level officers direct, control, and coordinate the bulk

6 | of Hasbro's day-to-day activities.

7 |     12.    Hasbro is subject to the general and specific jurisdiction of this Court

8 | pursuant to California Code of Civil Procedure § 410.10 and Rule 4 of the Federal

9 | Rules of Civil Procedure. Hasbro transacts or has transacted business within the

10 | Central District of California.

11 |     13.    Shapiro is informed and believes and thereupon alleges that Hasbro has

12 | systematic and continuous contacts with California, including by soliciting and

13 | receiving orders from stores with locations in California, including Kmart

14 | Corporation, Target Corporation, Toys "R" Us, Inc., the Walgreen Company, and

15 | Wal-Mart Stores, Inc., and maintaining a business unit that focuses on girls' toys in

16 | Burbank, California.

17 |     14.    Hasbro is subject to the specific jurisdiction of this Court, including in

18 | that a substantial number of the transactions and occurrences in this action occurred

19 | in California; Hasbro first received the confidential information under the AHC in

20 | Santa Monica, California; Hasbro requested that Shapiro send the submission from

21 | Los Angeles, California to Pawtucket, Rhode Island; and Hasbro breached the AHC

22 | in Los Angeles, California, including by selling the Accused Toys in this District.

23 |     15.    The true names and capacities of Defendants named herein as DOES

24 | ONE through TEN, whether individual, corporate, associate or otherwise, are

25 | presently unknown to Shapiro, who therefore sues these Defendants by such

26 | fictitious names.  Shapiro will amend her complaint to substitute such true names

27 | and capacities when they have been ascertained. Shapiro is informed and believes

28 | and thereupon alleges that each of the fictitiously named Defendants is responsible

1  in some manner for the occurrences and damages alleged herein.  Shapiro is

2  informed and believes and thereupon alleges that each Defendant herein is now, and

3  at all times relevant thereto was, the agent, employee, servant or alter ego of each of

4  the other Defendants herein and, in doing the things hereafter alleged, was acting

5  within the scope of such employment, agency, servitude or alter ego relationship.

6       16.     Shapiro is informed and believes and on that basis allege that each of

7  the DOES has participated in or benefitted from the conduct of the named defendant

8  or is otherwise legally responsible in some manner for the matters alleged in this

9  complaint.

10  **FACTS COMMON TO ALL CLAIMS**

11       17.     Shapiro is an internationally known toy inventor, consultant and former

12  executive for major toy companies Mattel, Inc. and the Walt Disney Company.

13       18.     Since at least 1988, Shapiro has worked in the toy industry. Her

14  professional specialty is to create original toy concepts, stories, marketing and

15  packaging, particularly for small doll lines and marketing to girls.

16       19.     Shapiro has worked on iconic doll lines for girls and small children,

17  including the Cabbage Patch Kids, Barbie, Polly Pocket, and dolls based on the

18  Disney properties, including Disney Princess, Disney Fairies, and Tinker Bell.

19       20.     Shapiro was employed as a marketing executive for Mattel, Inc. from

20  1988 to 1995 managing multi-million dollar doll lines.

21       21.     Shapiro was employed at the Walt Disney Company from 1995 to

22  1997, and thereafter as an independent consultant.

23       22.     Shapiro has been retained as a consultant expressly to conceive original

24  story concepts, marketing materials and packaging copy for original and pre-

25  existing toy properties, including for the Disney Fairies, Tinker Bell, and Sofia the

26  First in 2013 and 2014.

27       23.     Shapiro is regarded as a marketing expert on how girls play with toys

28  and games, and has been hired to create, market, write and design aspects of toys to

LISA BORODKIN
ATTORNEY AT
LAW

4354.061/879088.1

COMPLAINT AND DEMAND FOR JURY TRIAL

appeal to girls, including video and interactive games based on pre-existing Disney properties such as "Pocahontas" and "101 Dalmatians."

24.    Shapiro has managed other global, multi-million dollar toy lines and brands including Nickelodeon toys and McDonald's toys.

25.    Shapiro has won Mattel, Inc.'s company awards for her work in product development.

26.    As a creative and marketing consultant since 1997, Shapiro's clients have included toy companies Mattel, Inc., The Walt Disney Company, MGA Entertainment Inc., the Jim Henson Company, Playmates Toys, Inc., JAKKS Pacific, Inc., Nakajima USA, Inc., Activision Blizzard, Inc., Wild Planet Toys, Inc., Diggin Active, Inc., and Shains, and other brands seeking to enter the toy market such as Skechers USA Inc. and United Talent Agency.

27.    Shapiro has been creating integrated toy concepts, marketing and packaging proposals for license and direct manufacture since 2001.

28.    In 2001, Shapiro entered into a benchmark transaction with Mattel, Inc. demonstrating a concrete market for, and means of valuation of, a license of her work, namely a 2001 royalty license agreement with Mattel, Inc. for an original small doll line, which was sold at retailers including Toys "R" Us and Kmart, under the name "Little Sparklin' Clouds."

29.    In the toy industry, "play pattern" refers to how a consumer plays with and interacts with a toy or product.

30.    Shapiro is recognized, and regularly engaged professionally, for her expertise in understanding girls' and small children's "play patterns" in doll lines.

31.    Conventional wisdom in the toy industry is that story and character are key aspects of marketing to girls, and that "play patterns" engage traits specific to narrative stories that engage girls, such as personality traits, iconography and character stories.

32.    Shapiro is also recognized, and regularly engaged professionally, for

her expertise in marketing mechanics, new and hot girls' trends, and how dolls should be presented at retail.

## PLAINTIFF'S WORKS

33.     Shapiro created in or about 2012 an original line of animal-shaped small dolls named "Wishables" incorporating, *inter alia,* the magical play of a snow globe into a character, doll or pet, and the novel inventions of using shaped glitter as an iconography of unique symbols associated with character traits within the doll and repeated on the packaging, building on the emerging trend of "snow globes."

34.     Shapiro's original slideshow presentation, sculptural prototypes, and in-person demonstration, together with all information contained therein, including but not limited to idea, concept, design, story, features, advertising, focus group research, news stories, trend analysis, marketing mock-ups, packaging, testimonials, proposed integration with Hasbro existing properties, and licensing examples are referred to hereafter collectively as the "Wishables Submission."

35.     A true and correct copy of the confidential slideshow presentation for the Wishables Submission that Shapiro submitted to Hasbro under the AHC is attached as **Exhibit "1."**

36.     A photograph showing three sculptures for the Wishables Submission that Shapiro presented to Hasbro under the AHC is attached as **Exhibit "2."**

37.     The United States Copyright Office granted Shapiro Copyright Registration Number VAu 1-194-503 in work entitled "Wishables" described as "text, photograph(s), 2-D artwork, sculpture" based on Shapiro's submission of **Exhibits "1" and "2"** as specimens.

38.     The United States Copyright Office granted Shapiro Copyright Registration Number VAu 1-195-749 in work entitled "Wishables Models" described as "sculpture" based on Shapiro's submission of **Exhibit "2"** as a specimen.

39.     A photograph of five of the sculptures for the Wishables Submission is

1   included as page 8 of **Exhibit "1."**

2       40.    A photograph of a sculpture Shapiro created for the April 25, 2013

3   meeting is below, showing an application of the Wishables Submission (at right) to

4   Hasbro's existing Littlest Pet Shop property (expressing the symbol floating inside

5   the character) with a Hasbro Littlest Pet Shop doll then being sold (at left):



41.    Shapiro took all reasonable precautions to keep the Wishables

Submission confidential, maintained materials related to the Wishables Submissions

in password-protected computers and secure physical locations at all times, and

required recipients of the information to sign non-disclosure agreements every time

that she presented them, beginning on or about June 11, 2012.

42.    Shapiro's original inventions and confidential information, in the

Wishables Submission included, but were not limited to:

       a.     A line of small dolls in eight different, collectible, animal

       characters with a play pattern similar to familiar "snow globes" but instead of

       being hemispheric or globe-shaped, the entire figure of the animal would be

       in clear or transparent material, in which glitter would circulate in liquid when

the doll was moved;

b.    Instead of using white flakes simulating snow (as in conventional "snow globes") to use glitter shaped in a specific symbol that would swirl around in the liquid inside the animal character;

c.    Instead of mixing all shapes and colors of glitter together and using the same mixture in all animal characters in the line, to differentiate the animal characters and drive collectability by using a unique combination of a shape and color of glitter in each of the eight animal characters in the line;

d.    To associate each of the eight animal characters with its own unique symbol, that would carry through the character's narrative, personality, special empowering personality, and on the packaging, further appealing to girls' play patterns, sending positive messages to girls, and driving collectability;

e.    Specifically, as expressed in the slideshow in the Wishables Submission, a special iconography associated with the animal character, its narrative and personality, and the symbol floating inside, namely:  (1) Winnie the pony – competition – trophy; (2) Sweety the penguin – love- heart; (3) Beaux the puppy – friendship – paw print; (4) Moonzy the fawn – dreams – moon; (5) Babesy the bunny – going places – flower; (6) Bettina Lily the chick – wisdom – star; (7) Riskers the kitten – courage - happy face; and (8) Sunnyside the hamster – sunny days - sun.

f.    To repeat the symbol floating inside the character on the packaging and advertising for the toy, further reinforcing the branding and driving collectability;

g.    Sculptures using Hello Kitty and Littlest Pet Shop showing how the play mechanics, narrative symbol, packaging and branding could be applied to existing properties or licensed;

h.    Focus group research from girls in 2012 and 2013 collecting

comments from actual girls about what they liked about the toys, story and presentation;

    i.    Trend analysis from the New York Times and statements from the TSA indicating that snow globes were predicted as a new and hot trend in later 2012; and

    j.  The integration of all the foregoing elements.

43.    A custom and practice in the toy industry is for inventors to model aspects of new toys in "kit-bash" form, meaning, to show their features and functions using toy and non-toy parts, and to present such "kit-bash" models in combination with slideshows, and live demonstrations by the inventor.

44.    Shapiro ingeniously solved the problem of how to visually express that the Wishables Submission would have a play feature similar to "snow globes" by sculpting original molds of different animal characters, casting the animal characters with a translucent, colored resin, and affixing different shaped and colored glitter to each animal character to simulate the play mechanics of shaking the toy.

45.    Shapiro's sculptures were in generally accepted "kit-bash" model form, using pre-made glitter sorted into shapes and using different translucent colored resin to represent the more detailed expression in the slideshow in the Wishables Submission that in fact, each of the characters in the line would have its own unique symbol, that such unique symbol would be the shape of the "glitter icon floating inside;" that "Each Wishable has a special symbol, and that symbol is floating inside the character → Further encouraging collectability;" and that the "package indicates Wishable [character]'s 'wish specialty'" through use of the unique symbol. (Exh. 1 at 12-13).

46.    In the "kit-bash" sculptures in the Wishables Submission, Shapiro represented the foregoing expression by using a heart-shaped glitter on a yellow chick (Bettina Lilly), heart-shaped glitter on a green pony (Winnie), star-shaped glitter on a purple puppy (Beaux), heart-shaped glitter on a pink kitten (Riskers),

and star-shaped glitter on a blue fawn (Moonzie), to represent generally in "kit-bash" form, using ready-made components, that Bettina Lilly's symbol floating inside would be heart-shaped, Winnie's would be trophy-shaped, Beaux's would be paw-print-shaped, Risker's would be happy face-shaped, and Moonzie's would be moon-shaped.

47.   In a "kit-bash" sculpture in the Wishables Submission, Shapiro used pre-made glitter in the shape of stars to model the application of her invention to Hasbro's existing Littlest Pet Shop property depicted in Paragraph 38 above, showing how a star-shaped symbol floating inside the character with a "snow globe"-like play mechanic could continue the star- or flower-shaped decal painted on Hasbro's existing Littlest Pet Shop character to extend the character's personality and narrative into a "new way to play" using a "low-cost innovation" and one of the "newest and hottest girls trends."

48.   Shapiro is informed and believes and thereupon alleges that Shapiro's Wishables Submission contained information previously unknown to Hasbro, including her variation on using shaped glitter as symbols to carry through a narrative story, personality and character iconography to appeal to girls; repeating such symbols on the package to drive collectability; and original market research showing that the time was right to translate the new and hot "snow globe" trend for Hasbro's existing properties.

**THE PARTIES' COURSE OF DEALING**

49.   It is the custom and practice in the toy industry that toy companies invite outside inventors to submit original inventions, including for use with existing properties.

50.   Injecting a "new feature" or "new way to play" into long-standing toy properties on a regular basis is essential to the long-term sales prospects of existing properties, as it allows for new lines of toys ("line extensions") based on existing properties and encourages collectability.

51.     The value of an outside inventor's submission can be found in any aspect of a play pattern, feature, packaging device, narrative expression, marketing mechanic, market research, new combination of existing design elements, innovation, proof of concept, three-dimensional expression, or other information previously unknown to the toy company.

52.     On November 2, 2012, Phil Sage of Hasbro introduced Shapiro over email to Wayne Luther, Hasbro's Senior Director of Global Acquisitions and Director of Inventor Relations.

53.     Sage's introductory email disclosed that Hasbro recognized Shapiro as a proven expert in girls toys and that the areas in which Hasbro was seeking inventor submission were, *inter alia*:

"2. LPS [Littlest Pet Shop]: Animation new on the Hub, Want excitement, new surprises, low cost innovative feature[s] in pets, never been seen mechanisms.

3. Pony [My Little Pony]: Focus on hair, materials, styling innovation .. New ways to play[.]

4. Fashion dolls in general, a line or segment of product .. Not an item. Newest and hottest girls trends."

54.     Based on the information that Hasbro was looking for "excitement, new surprises, low cost innovative features," "never been seen mechanisms" "new ways to play" and "newest and hottest girls trends," Shapiro created the new prototype sculpture for inclusion in her Wishables Submission depicted in Paragraph 38 above to show how Wishables could be adapted to Hasbro's existing properties such as Littlest Pet Shop.

55.     On April 8, 2013, Hasbro sent Shapiro the AHC.

56.     On April 15, 2013, Shapiro returned the signed AHC to Hasbro. Thereafter, Shapiro received the fully signed AHC.

57.     On April 25, 2013, Shapiro met with Wayne Luther, Mike Gray and

1   Dougal Grimes of Hasbro at a suite at the Doubletree in Santa Monica, California

2   and presented the Wishables Submission.

3        58.     None of the three foregoing Hasbro employees, in the April 25, 2013

4   meeting with Shapiro, or at any time thereafter, stopped Shapiro's presentation or

5   disclosed to Shapiro that Hasbro was working on a concept that also involved

6   shaped glitter or glitter swirling in liquid inside a small doll, as would have been

7   customary in the custom and practice of the toy industry had Hasbro perceived any

8   overlap between the Wishables Submission and any of Hasbro's projects in

9   development.

10       59.     At the April 25, 2013 meeting, Luther requested that Shapiro Fedex the

11  sculptures in the Wishables Submission to Hasbro's office in Pawtucket, Rhode

12  Island, and that Shapiro upload the slideshow in the Wishables Submission using

13  Hasbro's electronic upload tool.

14       60.     On May 1, 2013, Shapiro FedExed her sculptures to Hasbro and

15  uploaded the slideshow in the Wishables Submission according to Hasbro's

16  instructions and in reliance on the AHC.

17       61.     Hasbro had exclusive possession of sculptures in the Wishables

18  Submission from approximately May 2, 2013 to July 25, 2013 and had possession of

19  the slideshow in the Wishables Submission from and after May 1, 2013 after having

20  first received the information on April 25, 2013.

21       62.     On or about July 25, 2013, Hasbro informed Shapiro that Hasbro was

22  "passing" on the Wishables Submission, stating "Pass: Not right for current

23  direction in pet shop."

24       63.     Hasbro did not at any time disclose to Shapiro that it was working on

25  any liquid and glitter filled toys in the small doll category or otherwise.

26       64.     Thereafter, in August 2014, Hasbro invited Shapiro to a recruiting

27  event in Los Angeles, California and asked Shapiro to submit her resume and

28  portfolio of work for potential full-time employment with Hasbro.

**HASBRO USES SHAPIRO'S INFORMATION IN MY LITTLE PONY**

65.    Shapiro is informed and believes and thereupon alleges that, some time after receiving the Wishables Submission, Hasbro released new lines of small dolls entitled My Little Pony Cutie Mark Magic Water Cuties, My Little Pony Rainbow Shimmer, and variations thereof (collectively, the "Accused Toys") with similarities to the Wishables Submission.

66.    Shapiro is informed and believes and thereupon alleges that Hasbro is selling the Accused Toys through every major toy retailer in the United States, including but not limited to Wal-Mart, Target, Toys R Us, Kmart, and Amazon, and worldwide.

67.    Shapiro is informed and believes and thereupon alleges that the same designers at Hasbro that worked on the Littlest Pet Shop line in and around 2013 also worked on the My Little Pony line and had access to the Wishables Submission.

**FIRST CAUSE OF ACTION**

**(Breach of Express Written Contract)**

68.    Shapiro re-alleges paragraphs 1 through 67, as if fully set forth herein.

69.    On or about April 9, 2013, Shapiro and Hasbro entered into the written AHC.

70.    On or about April 25, 3013, Shapiro first disclosed information comprising the Wishables Submission to Hasbro under the written AHC.

71.    In reliance on and in consideration of the AHC, Shapiro shared confidential and proprietary information comprising the Wishables Submission with Hasbro, including by providing Hasbro exclusive access for three months to Shapiro's unpublished sculptures, access to Shapiro's unpublished slideshow, and Shapiro's confidential, in-person demonstration.

72.    Shapiro fully performed all conditions and obligations required of her under the AHC, including but not limited to labeling all confidential information

1  thereunder "CONFIDENTIAL."

2      73.    Hasbro materially breached the AHC by the acts alleged above,

3  including, *inter alia*, using confidential information in the Wishables Submission

4  previously unknown to Hasbro in the Accused Toys.

5      74.    Hasbro has not paid Shapiro any compensation for using the

6  information acquired under the AHC that was previously unknown to Hasbro,

7  although Hasbro initiated the transfer of information, Shapiro's information was

8  directly responsive to Hasbro's inventor brief in Hasbro's November 2, 2012 email,

9  and it is Shapiro's livelihood to create such information.

10      75.    Shapiro is informed and believes and thereupon alleges that she has

11  been damaged by Hasbro's material breach of the AHC, in an amount unknown but

12  exceeding at least $75,000.00, based, in part, on the reasonable and customary

13  royalty rates and advances for license of original toy inventions; sales of the

14  Accused Toys, which are conservatively estimated in excess of ten million dollars

15  ($10,000,000.00); on Shapiro's historical toy industry salaries and consulting fees;

16  and Shapiro's 2001 benchmark transaction with Mattel, Inc.

17                 **SECOND CAUSE OF ACTION**

18      **(Breach of Implied Covenant of Good Faith and Fair Dealing)**

19      76.    Shapiro re-alleges paragraphs 1 through 75, as if fully set forth herein.

20      77.    Shapiro and Hasbro entered into a contract, namely the AHC.

21      78.    Shapiro fulfilled her obligations under the AHC.

22      79.    Any conditions precedent to Hasbro's performance of the AHC have

23  occurred.

24      80.    Hasbro unfairly interfered with Shapiro's rights to receive the benefits

25  of the AHC.

26      81.    Shapiro was harmed by Hasbro's conduct in an amount unknown but

27  believed to exceed Seventy-Five Thousand Dollars ($75,000.00).

28

**THIRD CAUSE OF ACTION**

**(Misappropriation of Trade Secrets in Violation of**

**California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq.*)**

82.     Shapiro re-alleges paragraphs 1 through 81, as if fully set forth herein.

83.     Shapiro owned a trade secret, namely information, including a formula, pattern, compilation, program, device, method, technique, or process, that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.

84.     In particular, Shapiro owned a trade secret consisting of a device for making small doll toys more collectible by taking the magical play of a snow globe and incorporating it into the shape of a character, doll, or pet, with shaped glitter extending the personality, identity and narrative of the character into a shape or symbol that floats inside liquid in the character, which gained value by not being known to the public or those skilled in the art.

85.     In addition, the Wishables Submission as a whole was a trade secret as an effective, successful and valuable integration of public domain elements and the aforesaid trade secrets that had independent economic value and was protected from misappropriation. (*See Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.,* 226 Cal. App. 4th 26, 47, 171 Cal. Rptr. 3d 714, 731 (2014), *review denied* (Aug. 20, 2014).)

86.     Shapiro's trade secret was the subject of efforts that were reasonable under the circumstances to maintain its secrecy, including that Shapiro required each and every recipient of the Wishables Submission to sign a Nondisclosure Agreement or Agreement to Hold Confidential prior to receiving it; that Shapiro at all times stored the Wishables Submission and related tangible materials in password-protected computers and secure physical locations; that Shapiro labeled the Wishables Submission "Confidential;" and that the Wishables Submission was

1    unpublished prior to Hasbro's use.

2        87.    Hasbro acquired, disclosed, or used Shapiro's trade secret through

3    improper means, namely by breach of the AHC.

4        88.    Hasbro's actions damaged Shapiro in an amount unknown but believed

5    to exceed Seventy-Five Thousand Dollar ($75,000.00).

6        89.    Shapiro is informed and believes and thereon alleges that Hasbro

7    misappropriated her trade secret willfully and maliciously, entitling her to an award

8    of exemplary damages in an amount two times the amount of her actual loss or a

9    reasonable royalty, pursuant to Cal. Civ. Code. § 3426.3.

10                           **FOURTH CAUSE OF ACTION**

11                **(Copyright Infringement, 17 U.S.C. § 501 *et seq.*)**

12       90.    Shapiro re-alleges paragraphs 1 through 89, as if fully set forth herein.

13       91.    On or about November 10, 2014 and November 13, 2014, Shapiro

14   submitted to the Register of Copyrights completed applications for registration,

15   deposit copies, and the applicable fees in order to register the copyrights in her

16   original, unpublished slideshow and sculptures expressing the Wishables

17   Submission. Shapiro's application for a copyright registration in the sculptures

18   included the statement, "These are modeling the expression of having various

19   shapes and sizes of glitter floating and moving in liquid that is inside them."

20       92.    The slideshow and sculptures submitted by Shapiro to the Copyright

21   Office contain material that is wholly original to their author, Shapiro, and is

22   copyrightable subject matter under the Constitution and laws of the United States.

23       93.    The Copyright Office granted Shapiro Copyright Registration Number

24   VAu 1-194-503 with effective date of registration of January 21, 2015 in work

25   entitled "Wishables" described as "text, photograph(s), 2-D artwork, sculpture"

26   based on Shapiro's submission of the slideshow and sculptures in the Wishables

27   Submission to the Copyright Office as specimens.

28       94.    The Copyright Office granted Shapiro Copyright Registration Number

VAu 1-195-749 with effective date of registration February 9, 2015 in work entitled "Wishables Models" described as "sculpture" based on Shapiro's submission of the photograph of the sculptures in the Wishables Submission attached hereto as Exhibit 2 to the Copyright Office as a specimen.

95.    As the owner of the copyrights in the unpublished material in the slideshow and sculptures comprising the Wishables Submission (collectively, the "Copyrighted Works"), Shapiro secured the exclusive rights under 17 U.S.C. § 106, among others, to make first publication of the Copyrighted Works and to prepare derivative works therefrom.

96.    Hasbro infringed, and is continuing to infringe, the Copyrighted Works, including by infringing Shapiro's right to make the first publication of the Copyrighted Works; by copying, reproducing, preparing and selling works derived from the Copyrighted Works; and inducing, causing, and contributing to others committing similar violations, including by selling the Accused Toys in the Central District of California.

97.    Shapiro did not authorize Hasbro to make first publication of the Copyrighted Works or to copy, reproduce, prepare derivative works from, display, or sell products infringing the Copyrighted Works, or at all.

98.    Hasbro did not seek or obtain any permission, consent, or license from Shapiro for making the first publication of the Copyrighted Works or to copy, reproduce, prepare derivative works from, display, or sell products infringing the Copyrighted Works, or at all.

99.    Hasbro's infringing acts alleged herein were willful, deliberate, and at least from and after December 2014, were committed with prior notice and knowledge of Shapiro's copyrights.  At a minimum, Hasbro acted in reckless disregard of Shapiro's copyrights.

100.    As a result of its actions, Hasbro is liable to Shapiro for willful copyright infringement under 17 U.S.C. § 501.  Shapiro suffered, and will continue

1  to suffer, substantial damage, including the loss of the right to control first

2  publication of her work, loss of the right to keep the Wishables Submission

3  unpublished, and other losses, in an amount not yet ascertained, but which will be

4  determined according to proof.

5      101.   In addition to Shapiro's actual damages, Shapiro is entitled to receive

6  all additional profits made by Hasbro attributable to the infringement and not

7  counted in determining actual damages, pursuant to 17 U.S.C. § 504; and an

8  accounting of and constructive trust over all revenues that Hasbro has received as a

9  result of its wrongful acts.

10     102.   In the alternative, Shapiro is entitled to statutory damages pursuant to

11 17 U.S.C. § 504(c), which should be enhanced by 17 U.S.C. § 504(c)(2) because of

12 Hasbro's willful copyright infringement.

13     103.   Hasbro's acts complained of herein have damaged, and will irreparably

14 damage, Shapiro.

15     104.   Shapiro has no adequate remedy at law for certain of these wrongs and

16 injuries in that (i) Shapiro's copyrights are unique and valuable properties which

17 may not have a readily determinable market value; (ii) the infringements by Hasbro

18 constitute deprivations of Shapiro's exclusive right to decline to release her

19 copyrighted work altogether, and to decline permission for the creation of

20 derivative works except on terms acceptable to Shapiro; and (iii) the loss of

21 Shapiro's right to attribution in connection with the first publication of her work

22 has been destroyed forever, along with the intangible loss of the goodwill and

23 publicity that should have accrued to Shapiro.

24     105.   Hasbro's acts of copyright infringement have caused Shapiro

25 irreparable injury and Hasbro threatens to continue to commit these acts, including

26 by planning a release of additional "waves" (or lines) of Accused Toys.

27     106.   Accordingly, Shapiro is entitled to preliminary and permanent

28 injunctive relief pursuant to 17 U.S.C. § 502 restraining and enjoining Hasbro and

1  its agents, servants and employees, and all persons acting thereunder, in concert

2  therewith or on its behalf, from using, copying, selling, displaying, or otherwise

3  exploiting the Copyrighted Works, or any works derived therefrom, including, the

4  Accused Toys.

5      107.   Shapiro is entitled to an order pursuant to 17 U.S.C. § 503 that any of

6  Hasbro's infringing products be impounded and destroyed.

7      108.   Shapiro is also entitled to recover her attorneys' fees and costs of suit

8  pursuant to 17 U.S.C. § 505.

9      WHEREFORE, Plaintiff Shapiro prays as follows:

10      A.   For an award of damages in an amount to be proven at trial of at least

11  Seventy-Five Thousand Dollars ($75,000.00);

12      B.   For restitution or disgorgement of all revenue Hasbro obtained by its

13  inequitable conduct, in an amount of at least Seventy-Five Thousand Dollars

14  ($75,000.00);

15      C.   For an award of the amounts that Hasbro has unjustly enriched itself

16  caused by misappropriation of Shapiro's trade secrets that is not taken into account

17  in computing damages for actual loss;

18      D.   For an award of exemplary damages in an additional amount not

19  exceeding two times the award under Paragraphs A and C above;

20      E.   For an injunction prohibiting the continued sale of the Accused Toys in

21  any territory or by any party within the jurisdiction of this Court;

22      F.   For an award of actual damages from the infringement of Shapiro's

23  copyrights plus additional profits of Hasbro attributable to the infringement, or

24  statutory damages for copyright under 17 U.S.C. § 504;

25      G.   For an order under 17 U.S.C. § 503 that any of Hasbro's infringing

26  products be impounded or destroyed;

27      H.   For an award of Shapiro's attorneys' fees and costs pursuant to Cal.

28  Civ. Code. § 3426.4 and 17 U.S.C. § 505; and

LISA BORODKIN
ATTORNEY AT
LAW

4354.061/879088.1

1   I.  For such other and further relief as the Court may deem proper.

2

3 DATED:  April 21, 2015   Respectfully submitted,

4               LISA BORODKIN, ATTORNEY AT LAW

5

6

7              By:  */s/ Lisa J. Borodkin*

8                   LISA J. BORODKIN

9              KING, HOLMES, PATERNO & BERLINER

10             LLP

11             Attorneys for Plaintiff ELINOR SHAPIRO

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED:      April 21, 2015          Respectfully submitted,

LISA BORODKIN, ATTORNEY AT LAW


By:  _____/s/ *Lisa J. Borodkin*_____

                            LISA J. BORODKIN

KING, HOLMES, PATERNO & BERLINER LLP

Attorneys for Plaintiff ELINOR SHAPIRO



EXHIBIT 1

24



We know girls love...

glitter • jewels • crystals

Sparkly tops

everything sparkly

The magic of snowglobes

SWAROVSKI

Confidential

©2013 Sparkle

EXHIBIT 1
25



©2013 Sparkle

EXHIBIT 1
26



EXHIBIT 1
27

# So what are Wishables?

Wishables are a collection of sparkly, crystal-like characters filled with glittery liquid who help make your wishes come true. And each one has a special secret wish just for you!

©2013 Sparkle

Confidential

EXHIBIT 1

28



©2013 Sparkle

Confidential

EXHIBIT 1
29

# The Wishables Story...



Mt. Wishmore is the most magical place to be

It's always snowing glitter
from the top of the peaks to the sparkling sea

It's home to the little Wishables
who help make your wishes come true

So tell them what you wish for
tell them the wish for you

Because when you wish upon a Wishable
and the glitter swirls and twirls

Know that your wish has been heard
wherever you are in the world

©2013 Sparkle          Confidential

EXHIBIT 1
30



EXHIBIT 1

31



Confidential

©2013 Sparkle

EXHIBIT 1
32



# Every Wishable has a secret message hidden inside!

Each character's base is covered with sparkly, colorful snow from Mt. Wishmore!

Surprise secret Wish-a-Woo message floating inside which is hidden until you get home!**

**Transparent partition keeps secret message in bottom section, still allowing glittery liquid to flow throughout.

1. Turn your Wishables over.
2. Use the Mt. Wishmore Medallion to scratch away the sparkly snow on the base.

3. And see your secret message that's floating inside!

*Mt. Wishmore Medallion*

Big Sales Coming Ur Way.

Coming Ur Way.

©2013 Sparkle                    Confidential

EXHIBIT 1
33



EXHIBIT 1

34

# And every wishable has a wish "specialty" which encourages collectibility

| character | which kind of wish is my specialty? | glitter icon ◦floating inside◦ |
|---|---|---|
| winnie the pony | competition | ◦trophy cup◦ |
| sweety the penguin | love | ◦heart◦ |
| Beaux the puppy | friendship | ◦paw print◦ |
| moonzy the fawn | dreams | ◦moon◦ |
| Babesy the bunny | going places | ◦flower◦ |
| Bettina Lily the chick | wisdom | ◦star◦ |
| Riskers the kitty | courage | ◦happy face◦ |
| sunnyshine the hamster | sunny days | ◦sun◦ |

©2013 Sparkle          Confidential

EXHIBIT 1

35

Package indicates wishable's "wish specialty"

each wishable has a special symbol, and that symbol is floating inside the character further encouraging collectibility



©2013 Sparkle

Confidential

EXHIBIT 1

36



EXHIBIT 1
37



# Mt. Wishmore

*The place where wishes go!*

**LEGEND:**

**1. Arrival Point.** Wishables first arrive here.

**2. Sorting Area.** Good wishes move onto next phase. Negative wishes are tossed into the sparkly sea where they instantly become glitter

**3. Light-Up Slide.** Wishes are carried down

**4. Nap Time.** Wishables have a nap and dream about the wishes

**5. Snack Time.** When Wishables get hungry, they head to the snack room

**6. Play Area.** Sometimes Wishables just like to hang out and play...and glow! (Light-up Feature)

**7. Elevator.** Takes Wishables up to the bridge and then cross over to Mt. Wishmore's highest—and most important—peak. *Elevator spins too!*

**8. Mt. Wishmore Summit.** Wishables sit on the highest peak, spin around, and while their glitter swirls and twirls, your wishes are crystallized...and soon will come true!

closed view

©2013 Sparkle                    Confidential

EXHIBIT 1
38

# And In The Words Of The Experts...

I love wishables!

She's so tiny and adorable! I want to take her with me always

I'd make many wishes

I'd wish for straight A's

I'd wish I could be a superstar

I'd make a new wish every morning

I'd make one new wish each week

I'd find a secret place in my bedroom to keep all my wishables

I like the way I get to see the secret message. It feels very magical

I love that they light up!

I'd want to keep her with me always

I want every single little wishable!



Source: Focus Groups 2012 and 2013

©2013 Sparkle          Confidential

EXHIBIT 1
39

# Snow globes are hot!

Snow globes have lately evolved into something more fashionable, intricate and expensive. Retail stores, fashion designers, corporations, movie studios and visual artists are increasingly creating signature globes, and not just for the holidays.

Source: New York Times, December 19, 2012

©2013 Sparkle

Confidential

EXHIBIT 1

40

# 2012 holiday window
# Saks Flagship Store, NYC

"We always have a general idea of which holiday window will be most successful and get the best response." said Harry Cunningham. Saks's senior vice president for design and visual merchandising. "I personally did not expect the snow globes to be as big a hit."

Source: New York Times, December 19, 2012



Confidential

©2013 Sparkle

EXHIBIT 1

# "TSA to okay snow globes for carry-on"

Headline from CNN, USA Today, NBC and others.

Snow globes must be pretty popular if even the TSA is talking about them!

©2013 Sparkle

Confidential

EXHIBIT 1

42



# Brand Overview

### Positioning
The only collectible line of sparkly, crystal-like characters filled with glittery liquid who help make your wishes come true, and each one has a special secret wish just for you

### Tagline
May all your wishes come true

### Target Audience
girls 4 – 8

©2013 Sparkle

Confidential

EXHIBIT 1
43

# Collectible Strategies

Create a frenzy and craze where girls gotta have wishables to help make all of *their* wishes come true, and discover all the secret wishes:

- Develop an extended matrix with endless possibilities for characters within each themed collection:

  — Each character has their own look, personality, and special secret wish for you

  — Different scales: mini's, 2", 3"

- Hundreds to collect!

©2013 Sparkle

Confidential

EXHIBIT 1
44



EXHIBIT 1
45



EXHIBIT 1
46





Wishables + Hello Kitty



And huge licensing opportunities. such as...

Confidential

©2013 Sparkle

EXHIBIT 1
47

# Line Opportunities

| Segment | Product | SRP | Description |
|---|---|---|---|
| Collectibles | 2" Wishables Themed Collections | $5.99 - $7.99 | Different themed collections. Hundreds to collect! |
| Deluxe | 3" Feature Wishables | $9.99 - $10.99 | Includes magical light up display base that illuminates your Wishables OR Color Change "crystal" character |
| Carrying Case | Carry Case w/ 1 Wishables | $11.99 | Carrying and Display Case all in 1. Comes with 1 special Wishable |
| Playsets | Mid-Priced Themed Playsets | $14.99 | Themes are endless: garden party, tree house, ocean friends, and many more! |
| | Deluxe Mt. Wishmore Playset | $19.99 - $24.99 | Deluxe Playset House with lights and fun magical transforming features |
| Activities | Low & Mid-Priced Themed Activity Kits | $4.99 - $9.99 | Customize, create and decorate your Wishables |
| Lifestyle | Jewelry & Fashion Accessories (Mini's!) Backpacks/Purses/Clip-Ons Plus Stationery, Room Décor, Plush, Apparel and more! | $4.99 - $19.99 | Wear your Wishables wherever you go! Live the Wishables lifestyle! |
| Licensing | Disney, Hello Kitty, Barbie, Paul Frank and other relevant top properties | | Licensing opportunities that combine girls' favorite characters with a Wishables collectible |

©2013 Sparkle

Confidential

EXHIBIT 1
48

# Wishables - Reasons Why

- Wishables combines the universally beloved themes of wishing and secrets with all the things that girls love... the magic of snow globes, glitter, sparkle and adorable characters. This has never before been seen in a collectible line.

- Wishables redefines the collectible category and provides a new way of collecting and playing.

- Wishables taps into what resonates with girls — the emotional need®desire to wish and dream, collect and share, and secrets too.

- Wishables provides endless possibilities for new characters & collections plus line extensions and licensing that will continue to build and sustain the frenzy and craze.

- Wishables is a lifestyle brand with an ownable look and positioning that extends beyond collectibles providing an opportunity to make a big statement at retail.

©2013 Sparkle   Confidential

EXHIBIT 1
49



EXHIBIT 1

50



EXHIBIT 2
50